Irvin Q. HINES, Petitioner,

v.

Joseph H. CRABTREE, Warden, Federal Correctional Institution, Sheridan, Oregon, Respondent.

Civil No. 96–498–HA.

United States District Court, D. Oregon.

June 19, 1996.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for Petitioner.

Kristine Olson, United States Attorney, District of Oregon, Kenneth C. Bauman, Assistant United States Attorney, Portland, Oregon, for Respondent.

## OPINION AND ORDER

HAGGERTY, Judge:

The petitioner, Irvin Q. Hines, is a federal prisoner incarcerated at the Federal Correctional Facility at Sheridan, Oregon ("FCI Sheridan"). The respondent, Joseph H. Crabtree, is the warden of FCI Sheridan, and is therefore petitioner's custodian and the proper respondent in this action. Fed. R.Civ.P. 81(a)(2); *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir.1992). Petitioner has filed a habeas corpus petition alleging that his statutory and due process rights are being violated by the decision of the Bureau of Prisons ("BOP") to exclude him from eligibility for a sentence reduction notwithstanding his successful completion of a residential substance abuse treatment program established under 18 U.S.C. § 3621(e). Petitioner has also filed a motion for immediate release, alleging that once his sentence is

properly reduced he will have served his present term of imprisonment.

Petitioner argues, and I agree, that the instant action for habeas corpus relief is controlled by this court's recent decision in *Davis v. Crabtree*, 923 F.Supp. 166 (D.Or. 1996).[1] Respondent, however, disputes the correctness of *Davis*. Moreover, respondent has apparently decided to ignore the applicability of *Davis* to similarly situated prisoners, and instead, individually challenge each habeas petition raising the identical issue decided in *Davis*. Because of the uncompromising posture of respondent's position, I will now attempt to more fully explain the rationale which guided me in deciding *Davis*.

## BACKGROUND

1.  *Controlling Statute, Implementing Regulation and BOP Program Statements*

As part of the Violent Crime Control and Law Enforcement Act ("VCCLEA") of 1994, Congress required the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). In order to carry out this mandate, Congress further directed that the BOP shall, "subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare)" for an increasing percentage of "eligible prisoners"[2] over three years. 18 U.S.C. § 3621(e). As an incentive to encourage prisoner participation in, and successful completion of, substance abuse treatment programs established under the VCCLEA, Congress authorized the BOP to reduce the period of custody served by a prisoner "convicted of a nonviolent offense" by up to one year for successfully completing the program. 18 U.S.C. § 3621(e)(2)(B).[3]

---

1.  I note that the case of *Davis v. Crabtree*, 923 F.Supp. 166, is currently on appeal in the Ninth Circuit Court of Appeals.

2.  Congress defined the term "eligible prisoner" within the meaning of the VCCLEA as "a prisoner who is (i) determined by the Bureau of Prisons to have a substance abuse problem; and (ii) willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B). There is no dispute that peti-

tioner is an "eligible prisoner" under this definition. Moreover, while such status may be necessary for admission into a substance abuse treatment program, it is not a specific criterion for early release based upon successful completion of the program. *See infra* n. 8.

3.  18 U.S.C. § 3621(e)(2)(B) provides:

    The period a prisoner convicted of a nonviolent offense remains in custody after successful-

The BOP subsequently issued a regulation, set forth at 28 C.F.R. § 550.58, to establish specific criteria for a prisoner's eligibility for a sentence reduction under § 3621(e)(2)(B). The regulation provides, in pertinent part:

> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months ... unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. 924(c)(3), or unless the inmate has a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault.

28 C.F.R. § 550.58. The BOP has also promulgated two Program Statements concerning the § 3621(e)(2)(B) incentive-based program. The first BOP Program Statement, P.S. 5330.10 dated May 25, 1995, is entitled "Drug Abuse programs Manual, Inmate" and has the following stated purpose:

> [T]o establish operational policy and procedural guidelines for the delivery of drug abuse treatment services and to describe the general philosophy of treatment guiding all Bureau drug abuse programs. Further, this Manual establishes implementation guidelines for the Violent Crime Control and Law Enforcement Act of 1994, specifically, amendments to 18 U.S.C. § 3621, Subtitle T, Substance Abuse Treatment in Federal Prisons.

Respondent's Answer to Petition for Writ of Habeas Corpus Filed Under 28 U.S.C. § 2241 (hereinafter, "Respondent's Answer") Ex. A, p. 1. Chapter 6 of Program Statement 5330.10 is entitled "Early Release Qualifications" and it recites verbatim the above-quoted language of 28 C.F.R. § 550.58.

The second BOP Program Statement, P.S. 5162.02 dated July 24, 1995, is entitled "Definition of Term, 'Crimes of Violence' " and has the following stated purpose:

To implement various portions of the Violent Crime and Law Enforcement Act of 1994 (VCCLEA) that make reference to "nonviolent offense," and "crime of violence," specifically, ... Section 32001, *Substance Abuse Treatment in Federal Prisons.* This Program Statement defines "crime of violence" as that term is used in these sections of the VCCLEA. The definition includes broad statutory language, as well as a framework for determining which specific criminal offenses fall within the statutory definition.

Respondent's Answer, Ex. B, p. 1 (emphasis in original). Program Statement 5162.02 states that "[c]ase management staff will review relevant documents to determine whether an inmate has committed a crime of violence." *Id.*

Program Statement 5162.02 expressly adopts and quotes the statutory definition of "crime of violence" contained in 18 U.S.C. § 924(c)(3).[4] That statutory provision reads, in part:

> [T]he term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Program Statement 5162.02 then proceeds, in Section 7, to enumerate certain offenses which are always to be considered crimes of violence. Further, other sections of Program Statement 5162.02 enumerate offenses which might be crimes of violence depending on particular facts of the offense. For example, pursuant to Section 9, an offense which is not a *per se* crime of violence, will be so construed if, at the time of sentencing, the court makes a determination that the offense in-

---

ly completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

**4.** Program Statement 5162.02 does not contain a distinct definition of the term "nonviolent offense," which is used in the underlying statute, 18 U.S.C. § 3621(e)(2)(B). However, the BOP

appears to have used the terms "nonviolent offense" and "crime of violence" interchangeably, and thus, I find that for purposes of interpreting relevant BOP regulations and program statements, a "nonviolent offense" is simply a crime that does not fall within the definition of "crime of violence."

volved violence, and that determination is based upon a specific offense characteristic in the pre-sentence report.

### 2. *Petitioner's Underlying Offense and Participation in Substance Abuse Treatment Program*

Petitioner's current term of confinement stems from a conviction for being a former felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), as well as for a supervised release violation for the same conduct. Following a plea of guilty to the above charges, petitioner was sentenced to 65 months in the custody of the BOP. At present, petitioner's release date is calculated as April 22, 1997.

While in custody, petitioner successfully completed a 500–hour residential drug and alcohol treatment program (hereinafter, the "Program") authorized under 18 U.S.C. § 3621(e).[5] Petitioner requested reduction of his sentence based on his successful completion of the Program. The BOP denied this request on the grounds that petitioner was convicted of a crime of violence as defined in the relevant BOP Program Statement. Specifically, petitioner's crime of conviction, felon in possession of a firearm, is classified as a *per se* "crime of violence" in Program Statement 5162.02. In other words, prisoners, like petitioner, convicted under 18 U.S.C. § 922(g) are automatically rendered ineligible for the statutorily prescribed sentence reduction.

Petitioner is currently pursuing administrative remedies to obtain his desired sentence reduction.

### 3. *Controlling Precedent*

In *Davis v. Crabtree*, 923 F.Supp. 166, the prisoner/petitioner was convicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The prisoner successfully completed a residential drug and alcohol treatment program established under 18 U.S.C. § 3621(e) and requested a reduction in his guideline sentence. The BOP denied his request for a sentence reduction pursuant to Program Statement 5162.02, which categorically excludes prisoners convicted under

§ 922(g). The prisoner exhausted his administrative remedies and filed a habeas petition in this court.

In granting the prisoner's habeas petition and ordering the BOP to award him a 12–month sentence reduction, I rejected the BOP's argument that it was vested with authority to define "crime of violence" in a manner inconsistent with governing case law. Instead, I followed the Ninth Circuit's clear line of cases which hold that possession of a firearm by a felon is not a "crime of violence" as that term is defined in 18 U.S.C. § 924(c)(3). *Id.* at 166–67.

### DISCUSSION

#### 1. *Exhaustion of Administrative Remedies*

■ Petitioner concedes that he has not yet exhausted his administrative remedies, but argues that this court should waive the exhaustion requirement and consider the merits of his petition because pursuit of administrative relief would be futile, and because a favorable decision on the merits might result in the immediate granting of the requested relief. It is well settled that exhaustion of administrative remedies is not jurisdictional. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir.1990). Indeed, this district court has previously recognized that the exhaustion requirement may be excused where a prisoner's efforts to secure administrative relief would constitute an exercise in futility, and where the prisoner may be entitled to some immediate relief. *Dougherty v. Crabtree*, 812 F.Supp. 1089, 1091 (D.Or.1991), *aff'd*, 981 F.2d 1258 (9th Cir.1992).

■ In the instant action, given the BOP's continued position that Program Statement 5162.02 remains valid and enforceable in its original terms, and given the categorization of petitioner's conviction under 18 U.S.C. § 922(g) as a "crime of violence," I find that it would be futile for petitioner to pursue his administrative remedies. Moreover, because petitioner's projected release date is less than a year from today's date, I find that if he is deemed eligible for a sentence reduction then he might be entitled to

---

**5.** Respondent does not dispute that petitioner has    successfully completed the Program.

immediate relief. Accordingly, I will excuse the exhaustion requirement and consider the merits of the habeas petition.[6]

2. *Eligibility under 18 U.S.C. § 3621(e)(2)(B)*

The narrow question to be decided here is whether the BOP properly categorized a conviction for felon in possession of a firearm under 18 U.S.C. § 922(g) as a "crime of violence."[7]

■ As indicated above, in creating the incentive-based program under § 3621(e)(2)(B), Congress expressly prohibited the BOP from considering a sentence reduction for prisoners not convicted of a "nonviolent offense."[8] The term "nonviolent offense" is not discretely defined by Congress or the BOP. Rather, the BOP has determined that a "nonviolent offense" is a crime that does not fall within its definition of "crime of violence," which in turn is the definition contained in 18 U.S.C. § 924(c)(3). *See* 28 C.F.R. § 550.58.[9]

Although the BOP has adopted the statutory definition of "crime of violence" contained in 18 U.S.C. § 924(c)(3), respondent argues that the BOP is not strictly confined to judicial interpretations of that definition. In other words, respondent argues that in adopting the statutory definition, the BOP did not also adopt the body of case law construing § 924(c)(3). I disagree.

■ In *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), and again in *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), the Supreme Court succinctly articulated the rule that an agency, even one charged with the administration of a statute, is not free to interpret a statute in direct contravention of well settled case law. The Court expressly stated: "Once we have determined a stat-

**6.** As the *Dougherty* court made clear, the general rule is that a petitioner must exhaust administrative remedies, and that while that rule is waived in this case, "the court will continue to apply [the] rule except when unique circumstances require its waiver." 812 F.Supp. at 1091.

**7.** I note that one United States Magistrate Judge in the Southern District of West Virginia has recommended that BOP Program Statement 5162.02 be held unlawful and set aside for failure to comply with the notice and comment provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. More specifically, in *Wiggins v. Wise*, Civil No. 1:96–0113, Findings and Recommendation (S.D.W.Va. May 29, 1996), the Magistrate Judge found that Program Statement 5162.02 is inconsistent with the underlying regulation, 28 C.F.R. § 550.58, "because the Program Statement significantly alters and expands the statutory definition of 'crime of violence' in Section 924(c)(3) which was adopted by the regulation." *Id.* at 44–45. As a consequence of this substantive change in the existing regulation, the Magistrate found that Program Statement is a legislative rule (as opposed to an interpretative rule exempt from APA requirements of notice and comment), and thus, is subject to the notice and comment requirements of the APA. The Magistrate's Findings and Recommendation has been referred to a United States District Court Judge, however, I am currently unaware of whether the Article III Judge has issued any ruling concerning the adoption or rejection of the Magistrate's recommendations.

In the case before this court, I need not reach the broader question of the legality of Program Statement 5162.02. The issue has neither been raised nor is the resolution of the issue vital to the determination of the narrow question presented.

**8.** The only other congressional commands were that the BOP not consider prisoners who had not successfully completed a qualifying treatment program, *see Bowser v. Crabtree*, Civil No. 96–44–HA, slip op. at 2–7, 1996 WL 473804 (D.Or. Apr. 19, 1996) (affirming, on reconsideration, the holding that successful completion of a treatment program is a prerequisite to eligibility for any sentence reduction under § 3621(e)(2)(B)), and that any sentence reduction may not exceed one year. *See Sesler v. Pitzer*, No. CIV. 5–95–273, 1996 WL 262798 (D.Minn. Apr. 19, 1996). Neither of these rules are at issue in the instant action.

**9.** The following supplementary information provided by the BOP at the time it published the proposed regulation in the Federal Register supports the notion that the BOP has defined "nonviolent offense" in terms of the § 924(c)(3) definition of "crime of violence":

New § 550.58 establishes procedures to be used by the Bureau in determining eligibility for early release and for determination of the length of the reduction in sentence. In keeping with the statutory provision that possible reduction in sentence is applicable to an inmate convicted of a nonviolent offense, an inmate whose current offense falls under the definition in 18 U.S.C. 924(c)(3) of a crime of violence is excluded from consideration.

ute's clear meaning, we adhere to that determination under the doctrine of *stare decisis*, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning." *Maislin,* 497 U.S. at 131, 110 S.Ct. at 2768 (emphasis in original); *Lechmere,* 502 U.S. at 536–37, 112 S.Ct. at 847–48 (quoting *Maislin* ). The Court has recently reaffirmed this rule in *Neal v. United States,* —— U.S. ——, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996), where the Court held that stare decisis required it to adhere to a prior statutory interpretation pertaining to the sentencing calculation of a certain drug, in the face of a newly conflicting methodology set forth by the United States Sentencing Commission in the Sentencing Guidelines. *Id.* at ——–——, 116 S.Ct. at 768–69. In sum, an agency's interpretation of a statute, irrespective of any deference which may be due to that interpretation, "cannot compel a court to forgo the principle of stare decisis and abandon a construction previously made." *Aguirre v. INS,* 79 F.3d 315, 317 (2d Cir.1996); *see also United States v. Novey,* 78 F.3d 1483, 1486 (10th Cir.1996).

The fact that no court has interpreted the term "nonviolent offense" found in 18 U.S.C. § 3621(e)(2)(B) is of little consequence as the BOP itself has construed that term to have the same meaning as the term "crime of violence" found in 18 U.S.C. § 924(c)(3). Thus, it is the § 924(c)(3) definition of "crime of violence" which is now at issue. As I noted in *Davis,* the Ninth Circuit has explicitly held that possession of a firearm by a felon does not constitute a crime of violence under § 924(c)(3):

We hold that possession of a firearm by a felon is not a "crime of violence" under § 924(c). Commission of the crime requires no act other than possession of the firearm nor, consistent with interpretations given similar provisions, does it pose a "substantial risk" that physical force may be used against a person or property.

*United States v. Canon,* 993 F.2d 1439, 1441 (9th Cir.1993). Having adopted the § 924(c)(3) definition of "crime of violence," the BOP is not at liberty to disregard those cases interpreting that statutory definition; nor am I at liberty to disregard those same cases in assessing the BOP's interpretation of the statutory definition. While Program Statement 5162.02, on its face, purports to apply the § 924(c)(3) definition of "crime of violence" by "determining which specific criminal offenses fall within the statutory definition," the BOP has impermissibly included a conviction for felon in possession of a firearm on the list of *per se* crimes of violence. The BOP simply does not have the authority to override or amend § 924(c)(3) as construed by the courts. *See Neal,* —— U.S. at ——, ——, 116 S.Ct. at 766, 768. It follows that the BOP improperly excluded petitioner from eligibility for a sentence reduction under 18 U.S.C. § 3621(e)(2)(B).[10]

■ I am mindful that a prisoner who successfully completes a residential drug abuse treatment program may properly be excluded if the prisoner "has a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault." 28 C.F.R. § 550.58. I am further mindful of the fact that petitioner has a prior conviction for robbery. However, the BOP's exclusionary

---

**10.** I am cognizant of the rationale advanced to support the BOP's approach of defining § 924(c)(3) in terms of specific offenses. Respondent explains that the BOP's approach "ensures that ... [the] rehabilitative program will be used to reduce the period of custody of only those inmates whose offense conduct was truly nonviolent." Respondent's Answer, at 9. Further, in *Wiggins,* the Magistrate noted that Judith Simon Garrett, Assistant General Counsel in the BOP's Legislative and Correctional Issues Branch, who participated in drafting the BOP Program Statements, argued that the BOP approach "guarantees uniform application of the early release statute." Findings and Recommendation, at 19.

I do not, however, find the explanations proffered to be sufficiently compelling to warrant reconsideration of the Ninth Circuit's interpretation of § 924(c)(3), even if such authority is vested in this court. *See Aguirre,* 79 F.3d at 317 (holding that a court is "not prevented from making an independent decision whether a particular case now requires a revised reading of a statute"); *cf. United States v. Jackson,* 59 F.3d 1421, 1422 (2d Cir.1995) (even if agency's pending interpretation of a statutory term "might have influenced us to adopt a congruent interpretation ... as an original matter, once we have construed the statute, we will not reinterpret it in the absence of new guidance from Congress").

**1110**

decision as to petitioner was based solely on the fact that his crime of conviction, violation of 18 U.S.C. § 922(g), was a "crime of violence" *per se.* Respondent admits that "[t]he BOP did not deny Inmate Hines the one year reduction in his guideline sentence based on his Robbery II conviction." Respondent's Answer, at 7 n. 1. Accordingly, petitioner's prior conviction does not present cause to deny his request for an order directing the BOP to treat him as eligible for a sentence reduction under § 3621(e)(2)(B).

█ As a final matter, I recognize that a prisoner's mere eligibility for a sentence reduction does not guarantee that such a reduction will be granted. The underlying statute unmistakably gives the BOP discretion concerning the reduction of a prisoner's sentence upon successful completion of a qualifying treatment program. Nevertheless, respondent has made it clear that "[t]he BOP has decided . . . that all eligible inmates who successfully complete[ ] the 500 hour residential drug and alcohol treatment program [will] receive a one-year reduction in his or her sentence." Respondent's Answer, at 11. Accordingly, no reason exists to deny petitioner's request for a one-year sentence reduction.

### CONCLUSION

For the reasons provided above, petitioner's petition for a writ of habeas corpus (doc. # 1) is GRANTED. Specifically, I find that petitioner is a "prisoner convicted of a nonviolent offense," within the meaning of 18 U.S.C. § 3621(e)(2)(B), and therefore, is eligible for a reduction in his guideline sentence under that statutory provision. Further, I hereby direct the Bureau of Prisons to reduce petitioner's sentence by one year.

In light of the sentence reduction ordered herein, petitioner appears to be entitled to immediate release from custody. Accordingly, petitioner's motion for immediate release (doc. # 3) is conditionally GRANTED. I hereby direct the Bureau of Prisons to immediately release petitioner from custody or show cause, no later than June 28, 1996, why

petitioner should not be immediately released.

IT IS SO ORDERED.